Good morning. Christopher John Stender representing the petitioner Navneet Vaid. This is an immigration asylum case where the immigration judge superimposed a negative credibility finding from one witness, the wife of the petitioner, Rajni Belli, to the asylum applicant Navneet Vaid. On the first day of testimony, Mr. Vaid's testimony on direct examination was very brief. On a second day of testimony, his wife, Rajni Belli, was called to testify in support of his asylum claim. Immediately upon, I think within the first two pages of the transcript, it's on the administrative record pages 171 to 172, the immigration judge is immediately critical of Ms. Belli's testimony. She claims and uses the word memorized. She accuses Ms. Belli of memorizing some of the testimony. After Ms. Belli's testimony, Mr. Vaid should have been called and given the opportunity to explain whatever inconsistencies existed. This was never done. He never has this opportunity. Ms. So here's the problem I have with that argument, is I know that our case law says that the witness has to be, the petitioner has to be given an opportunity to explain any inconsistencies in his or her testimony. But what case says that the petitioner has to be given an opportunity to explain inconsistencies in other witnesses' testimony? Well, I think the case I think the Court might be referring to is Z. Lynn Chen v. Ashcroft, where I believe the immigration judge is admonished if they're going to make an adverse credibility finding to give the petitioner an opportunity, the applicant, the asylum applicant, an opportunity to explain those inconsistencies. Made by other witnesses? I mean, that arise because of discrepancy among witnesses? Well, clearly I think the case should be read that way because the immigration judge clearly was going after Ms. Belley's testimony and trying to use her testimony to discredit the asylum applicant's testimony, not giving him the opportunity to get back up on the stand and testify and try to explain those inconsistencies. So as a practical matter, how would that happen? Would the immigration judge then call the petitioner to the stand to comment on all of the testimony of the other witnesses? Well, certainly I think the applicant's counsel was in a good role to do that, and the counsel in this case did not do that, and I think the counsel made a very sparse record on the direct testimony of the asylum applicant. However, once the asylum judge made it clear, and there's a lot of back and forth going on after the second day of testimony between the government trial attorney, the immigration judge, there's on-the-record, off-the-record, there's argument, and then there's re-questioning. It's clear at this point that this is the drive of the immigration judge, and it's not done, and I think the asylum applicant is not given that opportunity to go back on the stand and testify, and yet his testimony is discredited not through anything that he says or that he submitted, but the testimony of a second witness, his wife. That's certainly the thrust of the I.J.'s opinion, and this, of course, is the case that I transposed earlier in this morning's argument. It is. But the opinion wasn't entirely devoid of conflicts in his own testimony. What I would point out is the inconsistencies are direct extrapolations from the wife's testimony to his testimony. What the immigration judge takes the asylum applicant to task on is that he was, quote, incomplete, that he did not bring things out, but yet when he's asked those questions, he answers them. And I think the immigration judge errs in that. I think there was a case where the immigration judge questioned the asylum applicant why he did not explain that he saw a doctor earlier when he was in India when, in fact, he did say that. That's in the administrative record on page 111, but yet the judge takes the asylum applicant to task saying, why didn't you tell me that before? Why aren't you bringing these facts to me? He was never asked those questions. It's not fair to hold it against him when he's never asked when he's asked. He responded. Getting to the one-year issue, this Court does have jurisdiction to review whether or not the failure to file within one year should be excused. I believe and would argue that under Ramadan II, it's a mixed question of law and fact. And in Ramadan II, the Ninth Circuit defined it, a mixed question of law and fact, as whether the facts satisfy the statutory standard. There's a lot of evidence here that the asylum applicant was depressed. There's letters from two doctors, one in India. There's a letter from Kaiser Permanente in this country. The immigration judge goes off the record, goes to Google, Googles the name of the medication that the asylum applicant has taken, I think it was prothiadine, and comes back and says, on the record, I find that it's a powerful mood elevator. And then goes ahead and the respondent gives further, excuse me, the asylum applicant gives further testimony regarding that. Then the immigration judge seeks to discredit his testimony that he was taking medication from the fact that he has a pharmaceutical background, and he claimed that it was not providing him enough relief, and that since he has that background, he should have known and should have sought other relief for that, and attempted to discredit his testimony that way. I think that's completely improper, and that that was pure speculation on the part of the immigration judge. I think the late filing beyond the one year can be excused, and it can be explained through depression. It's specifically noted as an exception under the extraordinary circumstances regulation, and I think there's plenty of evidence in the record that shows that the respondent filed his asylum application within a reasonable time of being in the United States. Counsel, what if the I.J. didn't believe he was depressed? Can we review that? Well, there's no basis for the immigration judge to make that determination. All the evidence of the record is that he was depressed. There's two letters from doctors. There's his testimony. The immigration judge goes off the record, finds that he was taking a strong medication, which he finds on Google and says it's par for the course. The fact that the credibility determination might have been wrong doesn't answer the question whether we can review it. Well, Ramadan II does give the court that authority. It's a mixed question of law and fact, and I think that there was enough evidence here presented to satisfy the regulation and excuse the fact that he didn't file timely. I'd point out, too, that he was in the country earlier for a five-month period. He doesn't file for asylum. He doesn't extend his visa. He doesn't stay here illegally. He goes back to India and returns a second time after a 10-day visit and still doesn't apply for asylum. It doesn't make sense, on the one hand, for him to not file for asylum if there is no excuse. If his objective was to stay here and he truly feared going back to India, which I think his testimony was credible on that point, then why doesn't he file for asylum? The reason is clear, because of the depression. The petitioner was a credible witness, and there was no direct challenge made to his credibility. It's only after his wife testifies that the immigration judge calls the question. And this, again, as I stated, was done with an opportunity for him to explain or clarify. Counsel, was there an adverse credibility determination regarding his testimony on the depression issue? I would say it's not clear on the record, Your Honor. The judge does call it into question, and she, I believe, as I've stated, goes improperly into speculation that with his pharmaceutical background, he should have realized that the medication he was taking wasn't helping him. He should have done something else. That doesn't dismiss the fact that he was taking the medication, and as she stated, it was a powerful mood elevator. Regarding the three discrepancies that the immigration judge points out, they're really not relevant and do not go to the heart of the claim. One problem is whether or not the first – the timing of the first arrest. The petitioner testified it was about 5 or 6 p.m., the arrest at the house. The wife testifies that it was at 4 p.m. It really doesn't matter exactly what time, whether it was an hour later or two hours later. Under Valerio Lopez, differences in testimony and the timing of a particular incident that reveals nothing about the applicant's fear is not adequate to base an adverse credibility finding. That's exactly what the immigration judge did here. She tries to look at another incident where Mrs. Belli's testimony about the number of times the police visited the house, and the immigration judge goes into this at the administrative record at 205 to 211. The problem there is the playing field is always shifting in the questions. It's how many times, how many arrests, how many arrests at home, was she at home, was it after the asylum applicant left to the United States. So it's never – her answers may seem unclear, but I think it's because it's shifting questions as to what periods of time were being inquired about. These things are really clear in the record. The third incident, again, was the timing of the first arrest. He claimed he was returning home, and the testimony comes out at 4.30 in the morning. The wife testified differently. Again, I would cite Valerio Lopez for that proposition that the timing really doesn't matter. And also, in the administrative record on page 93, it's clear that he had a bag with medicine in folders. This was consistent with him returning from work. The contraindication information that was submitted by the government, I think, is not sufficient to refute the fact that there are still ongoing problems in India, that the police still engage in extrajudicial killings and torture. And, in fact, I think what's submitted does support the petitioner's claim. And also, under the Catt claim, I believe the evidence of record has shown that he was tortured, and the contraindications report do show a likelihood that he would be tortured. I think the immigration judge admits as much, but the immigration judge claims he would not be arrested. All right. Kelsey, you've exceeded your time. We'll give you a minute for rebuttal. May it please the Court. I'm Lindsay Williams, and I represent the respondent in this matter. To address, first of all, a couple of points that were made by Mr. Vahid's attorney, on administrative record page 58, the immigration judge says even respondent's own testimony at the previous hearing was troublesome. And rather than his wife's testimony assisting him, the Court concludes that the wife's testimony actually weakened the credibility of Mr. Vahid. But it's not that Mr. Vahid had come in and presented credible testimony, and the immigration judge did not have any doubts before his wife came in. The immigration judge voiced concern regarding both witnesses' testimony. Secondly ---- But she said just only it was troublesome as to his. She wouldn't have made an adverse credibility finding, probably, had the wife not testified. Well, Your Honor, in all actuality, in looking at the full immigration judge's decision, there are several inconsistencies in Mr. Vahid's own testimony and between Mr. Vahid's testimony and his application, on top of the inconsistencies that appeared between Mrs. Belli's testimony and Mr. Vahid's testimony. Besides the fact that Mrs. Belli was a corroborating witness, her testimony was presented to corroborate Mr. Vahid's testimony. And when her testimony is inconsistent with his, that is material and it is properly considered by the immigration judge. Did he have an appropriate opportunity to respond to any of these issues? Yes, Your Honor. And that's the second point that I wanted to make is, first of all, I'd like to note that there is some ---- the Petitioner takes issue with the fact that there were translation problems. In the administrative record on page 89, 146 and 147, Mr. Vahid states that he is fluent in English. And the immigration judge points out that Mrs. Belli also appears to be fluent in English as she cuts off the interpreter before the interpreter has finished interpreting the question for her and answers it. With respect to the ability to respond, Mr. ---- both Mr. Vahid and Mrs. Belli were fluent in English. The frequency of police visits, the times of the arrest, the knowledge that they both had. Just to take, for example, page 171 of the administrative record, which Petitioner's counsel characterized as badgering or the immigration judge painting Mrs. Belli into a corner, another way of looking at it is the immigration judge is saying, look, Mrs. Belli, the way that you're answering these questions, it's appearing to me like you're just taking it from memory, because your counsel is asking you a question, and instead of directly answering the question that's been asked to you, you're just repeating something. What did your husband say to you when he got home from the first time? My query went to whether he had an opportunity to come forward. Yes, Your Honor. And the answer to that question is yes. Throughout the record, there are several times that the immigration judge steps in and clarifies with Mr. Vaid, okay, how many times, and both with Mrs. Belli as well, how many times, what was the frequency, what time was it, where were you coming from, where were you going to. There were several times that Mr. Vaid would say a date, and the interpreter would say, Your Honor, he's just said this date, but earlier he said this date. And the immigration judge, instead of letting the two contradicting dates stand, would say, Mr. Vaid, the interpreter's going to ask you again, correct the date. So this isn't a case where you have a petitioner that was not given an opportunity to correct his testimony. What you have is a situation where you have a husband and a wife who are testifying before an immigration judge, and the immigration judge is having problems with the answers that they're giving because, for instance, Mr. Vaid's, the period of time that Mr. Vaid entered the United States before he filed his asylum application, which was over two years, that's important to Mr. Vaid's case. It's important to know what he was doing during that period of time. His treatment for his depression, that's important. That's material to his claim. So for him to forget that he had seen Mr. Chopra, Dr. Chopra, in July of 1999, before he ever left India to come to the United States the first time, and then later on happened to mention it, and then at one point say, Well, really it was in 2000, and then at first he said that it was his wife that saw the doctor. I mean, you have to understand that the immigration judge is in the unique position to be able to see all of this unfolding, and the way that it was unfolding was it was very chaotic. Dates were being thrown around. It wasn't a coherent story. And I think that's what's reflected in the immigration judge's decision. And this Court has to stand by the very deferential review standard when it comes to adverse credibility findings. If we disagreed with you entirely on the credibility matter, would it make any difference? It would not make a difference, Your Honor, with respect to the asylum claim, because it is our position that this Court does not have jurisdiction to review the asylum claim. I'm thinking of when the BIA said, Even if everything he said was true, it's not enough to establish a well-founded fear because of changed conditions. Well, that was with respect to the withholding of removal in the CAT claim. With respect to the asylum claim, the Board did affirm the immigration judge's finding that it was untimely and that the Petitioner failed to establish extraordinary circumstances. But well-founded fear sounds a lot like asylum, doesn't it? Yes, Your Honor, except that going in order, you have the asylum claim first, which has to have been filed within one year. It wasn't. He needs to show extraordinary circumstances. He didn't because of an adverse credibility finding with respect to the extraordinary circumstances over which this Court does not have jurisdiction. There is no question of law. There is no tolerable constitutional claim that has been presented. This is not an instance like Ramadan where we have undisputed facts that we're applying to law. This is not a mixed question of fact and law. It's purely factual. So that leaves us with withholding of removal in CAT. It's the government's position that the record does not compel a conclusion that is contrary to that reached by the immigration judge with respect to the adverse credibility claim, which is the standard that is before this Court. But even moving beyond that, looking to the CAT claim, and this was another alternative finding that the immigration judge had found, the country reports that were submitted by the government show that the militant group that Mr. Baid was allegedly associated with is no longer active and hasn't been active since 1996. The immigration judge went through and made an individualized finding and said, okay, looking at the country reports, the only danger of him being tortured if he's returned is if he's arrested. Okay, well, there's no reason to believe that he'd be arrested because he's in the religious majority. The militant group with whom he was supposedly associated with is no longer active. He's never been a member of a political group and he's never been caught taking part in any activity that would cause him to be arrested. So based on that, the immigration judge correctly found that even taking the adverse credibility finding out of it, there still was not enough evidence that he had a well-founded fear or that it was more likely than not that he would be tortured upon his return. So all in all, dealing with the asylum claim, it's our position the court does not have jurisdiction, dealing with withholding of removal in CAT, the adverse credibility finding should stand and even if it doesn't with respect to CAT, the changed country conditions refute Mr. Baid's claim that he would more likely than not be tortured. If there are no further questions? It appears not. Thank you. Thank you. Please. I would point out the immigration judge does not use anything in the applicant's asylum application to find that the asylum applicant was incredible. She does in her oral opinion use the fact that and as Government Counsel has stated that he did not see a doctor before he left India but as I argued, page 111 of the administrative record, he does answer that. So the immigration judge is mistaken when she states he didn't mention that originally. That's just a mistake in the record. Also, I think what's important under the findings of fact and this frames the whole issue is the second paragraph of the judge's decision under the findings of fact is the court has determined that the respondent's wife was not a credible witness, period. And that's the whole thrust of the immigration judge's decision. She's comparing the wife's to the asylum applicant's testimony and on that basis, finding that the asylum applicant is incredible without an opportunity to respond. And that is simply wrong, Your Honor. And I think the case should be remanded on that basis. All right. I'm a little puzzled by the BIA decision because as the government has argued, it first addressed asylum and that's true and then it addresses withholding of removal but it says even if the immigration judge had found the respondent testified credibly and even assuming past persecution, we affirm the immigration judge's finding that evidence of change conditions in Punjab since the respondent's departure rebut the presumption that the respondent's fear of returning there is well founded. The issue, now that's part of the discussion purportedly in the withholding of removal section but that's using the language of asylum. If they, if the board thinks, the question for withholding is is it more likely than not that he'll be persecuted? The question for asylum is does he have a well-founded fear and he gets a presumption of it if there was past persecution. But if that's the way the board sees it, what can you possibly gain from a remand to the board? Well, number one, it's... Even on asylum? Well, first of all, I may not agree with the board's decision. I think they're mixing the standards there and I think that is unclear in their decision. But secondly, again, what we would gain by a remand is the fact that the judge denied the application really not based on anything the asylum applicant said but based on what the asylum applicant's wife said. And again, he was not given that opportunity to respond. But what the board is saying, even if we believe everything he said, the changed country conditions make it clear that he cannot have a well-founded fear of persecution. And it seems to me if we took that literally and admittedly a little out of context, it would be fatal to an asylum claim. Well, I would take issue, first of all, with their reading of those country condition reports. The immigration judge concedes what the conditions are in India and if the government's going to rely completely on the State Department report, I think it actually is in favour of the asylum applicant's claim. I don't think that's the correct adjudication of what that country condition report states regarding conditions in India. So you just take issue with the changed condition ruling? Correct. And I think they're only relying on that report and there is Ninth Circuit precedent that that usually is not sufficient to refute a claim, just the country condition reports, Your Honor. All right. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the court. The next case on calendar for argument is JDA Software v. Bissett.
judges: Fletcher, Canby, Rawlinson